POSTED ON WEB SITE

THIS DECISION IS NOT FOR PUBLICATION OR CITATION



FILED
SEP 2 5 2006
KT
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re

GOLDEN EMPIRE AIR RESCUE, INC.

         Debtor.
_____/

Case No. 05-18746-A-7
DC No. WLG-2

In re

GOLDEN EMPIRE AMBULANCE, INC.

         Debtor.
_____/

Case No. 05-19955-A-7
DC No. WLG-2

FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING MOTIONS FOR AUTHORITY TO COMPROMISE

The chapter 7 trustees in Golden Empire Ambulance, Inc. ("GEA") and Golden Empire Air Rescue, Inc. ("GEAR") have moved the court to approve compromises they have entered into with Rogers Helicopter, Inc. ("Rogers"). Peter Mosesian ("Mosesian") opposed the motions. Hearings were held on August 30, 2006, following which the court took the motions under submission.[1] This memorandum contains findings of fact and conclusions of law

---

[1] Rogers filed a Further Brief on August 24, 2006. Mosesian moved to strike it as not in compliance with the court's scheduling order, and sought sanctions. The motion to strike will be granted. The request for sanctions will be denied.

1

1 required by Federal Rule of Bankruptcy Procedure 7052 and Federal
2 Rule of Civil Procedure 52.  This is a core proceeding as defined
3 in 28 U.S.C. §157(b)(2)(A) and (O).

<u>The legal requirements for approval of compromises.</u>

Federal Rule of Bankruptcy Procedure 9019(a) states "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  The Ninth Circuit Court of Appeals has outlined the factors a bankruptcy court should consider in deciding whether to approve a settlement.  <u>In re Woodson</u>, 839 F.2d 610 (1988); <u>In re A & C Properties</u>, 784 F.2d 1377 (1986).  Although the <u>A & C Properties</u> case was decided under the Bankruptcy Act of 1898, its reasoning is still applicable to the Bankruptcy Code that governs these cases.

Although a bankruptcy court has great latitude in approving compromises, its discretion is not unlimited.  The court may approve a compromise only when that compromise is "fair and equitable."  <u>In re Woodson</u> at 620; <u>In re A & C Properties</u> at 1380-81.  The moving party has the burden of persuading the bankruptcy court that the compromise is fair and equitable and that the court should approve it.  <u>In re A & C Properties</u> at 1381.

The two decisions agree that in determining whether a compromise is fair and equitable, a bankruptcy court must consider four factors.  These factors are:

    (a) The probability of success in the litigation;

    (b) The difficulties, if any, to be encountered in the matter of collection;

    (c) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

2

[and]

(d) The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

While the bankruptcy court should give "due deference" to objections by creditors, such objections are not controlling. In re A & C Properties at 1832.

In deciding whether to approve a proposed compromise, a bankruptcy court should not substitute its judgment for that of the trustee as the settling party. In re 110 Beaver Street Partnership, 244 B.R. 185, 187 (Bankr. D. Mass. 2000). That Massachusetts bankruptcy court phrased the court's job as follows:

> "In sum, the Court will defer to the trustee's judgment and approve the compromise, provided the trustee demonstrates that the proposed compromise falls within the 'range of reasonableness' and thus is not an abuse of his or her discretion."

Id.

The Settlement Agreement.

The Settlement Agreement here is between the chapter 7 trustees of each estate and Rogers. The Recitals portion of the Settlement Agreement describes the events that led to this motion and to other contested and litigated matters in this court. Those facts will be repeated here briefly as necessary.

Rogers is the plaintiff in a Kern County Superior Court action (the "Kern County Action"), and GEA, GEAR, Mosesian, and John Penrose are defendants. Mosesian caused the Kern County Action to be removed to bankruptcy court after the two chapter 7 cases were filed. This court ordered the Kern County Action remanded to Kern County Superior Court upon Rogers' motion.

3

Rogers filed a motion for relief from stay to allow the Kern County Action to proceed, which motion the court has granted.

Mosesian prepared a "Settlement Agreement" before the two chapter 7 cases were filed (the "Mosesian Settlement Agreement"). Under the Mosesian Settlement Agreement, Mosesian agreed to pay the two chapter 7 estates $145,000 if certain conditions were met. These conditions included the dismissal of the Kern County Action against Mosesian and Penrose and a finding by a court of competent jurisdiction that all causes of action of GEA, GEAR and Rogers against Mosesian and Penrose were settled and resolved upon the payment of the $145,000.

Mosesian, as plaintiff, also filed an adversary proceeding in each of the two chapter 7 cases seeking declaratory relief that all causes of action based on alter ego or any claim asserted in the Kern County Action against Mosesian and Penrose were property of the two bankruptcy estates and were thereby settled upon the payment of $145,000. The defendants in those adversary actions filed motions to dismiss, which the court has granted without leave to amend.

GEA and GEAR on the one hand and Rogers on the other hand were two joint venture partners in RAGE. RAGE operated an air ambulance service in Kern County. Rogers filed the Kern County Action in 2002 seeking a partnership accounting and alleging fraud, breach of fiduciary duty, and conversion by all defendants. The Kern County Action was bifurcated with a trial on the partnership accounting taking place in December 2003. The trial resulted in a determination that GEA and GEAR were obligated to Rogers based only on the partnership accounting in

Case 05-18746    Filed 09/25/06    Doc 131

an amount of over $700,000. The remaining issue in the Kern County Action is the liability of Mosesian and Penrose. Rogers alleges that it has the exclusive right to all causes of action to pursue Mosesian, Penrose, and other entities related to GEA and GEAR for their actions involving RAGE, GEA, and GEAR. The chapter 7 trustees assert that GEA and GEAR have certain causes of action that belong exclusively to the chapter 7 estates.

Therefore, the Settlement Agreement states at Recital H that:

> "A dispute exists between [Rogers] and the Chapter 7 estates of GEA and GEAR over the appropriate plaintiff to pursue all of the causes of action against Peter Mosesian and John Penrose. Rather than expend judicial resources and estate funds, the parties to this Settlement Agreement have agreed to resolve their dispute upon the terms and conditions set forth below. The parties believe that the two adversary proceedings filed by Peter Mosesian will be dismissed and chose by this agreement to resolve all issues between [Rogers] and the two Chapter 7 estates."

Under the Settlement Agreement, Rogers is to pay $30,000 to each of the chapter 7 estates within ten days of entry of an order approving the Settlement Agreement. Also, Rogers agrees to assign five percent (5%) of the gross recovery from any judgment in the Kern County Action to the two chapter 7 estates to be divided equally between them. The $30,000 is a nonrefundable deposit on the 5% of the gross recovery.

The Settlement Agreement goes on to say:

> "The parties agree that except for a cause of action arising only as a result of the filing of the two chapter 7 cases, all other possible causes of action against Peter Mosesian, John Penrose and any other entities related to GEA and GEAR or related to or controlled by Peter Mosesian and John Penrose are particular to [Rogers] and the two estates do not have any right, title or interest in such causes of action. . . ."

5

However, the Settlement Agreement makes it clear that causes of action that arose upon the filing and as a result of the bankruptcy cases such as preferential or fraudulent transfers are general causes of action belonging to the two bankruptcy estates.

The only party objecting to this agreement is Mosesian. Peter Mosesian has filed timely proofs of claim in each case. Therefore, he has standing to object to the court approving the Settlement Agreement.

In support of the motion in each case, the trustees have filed declarations of the trustees and excerpts of the transcript of the 341(a) meetings of creditors in each case. Rogers has also filed a brief and a request for judicial notice in support of the motion in each case.

According to Mosesian, the court does not have enough facts to enable it to make a reasoned decision that the compromise is in the best interest of each bankruptcy estate. He says that the trustees have failed to evaluate what they are likely to recover above and beyond the initial cash payment. Therefore, according to Mosesian, the court cannot evaluate the reasonableness of the settlement.

Also, Mosesian says that this is really a sale and as such other bidders should be allowed. Mosesian also argues that the Settlement Agreement includes a sale of avoidance rights. (The Settlement Agreement itself says otherwise.)

<u>Analysis.</u>

In granting the motions to dismiss the adversary proceedings that Mosesian filed in these cases, the court concluded that the claims for relief asserted in the Kern County Action are claims

that do not belong to the bankruptcy estates. The court has, therefore, already concluded that the probability of the trustee's succeeding in arguing that the claims do belong to the estate is low. This court has already ruled that the claims do not belong to the estate. It is, of course, always possible that a state court would come to a different conclusion. Nonetheless, the first factor is met. The trustees have a low probability of success in litigation over who owns the causes of action.

The second factor is the difficulties to be encountered in the matter of collection. This factor does not appear relevant here. Rogers has already paid the cash down payment. The trustees can monitor the Kern County Action and take appropriate steps to collect their share. If Rogers prevails in the Kern County Action, the trustees will be able to obtain any amount to which they are entitled.

The next factor is the complexity of the litigation involved. Again, this court has already ruled that the claims in question belong to Rogers and not to the bankruptcy estates. In the court's findings of fact and conclusions of law in those adversary proceedings, the court observed that litigation about alter ego claims is complex. Certainly, if the trustees were to litigate this matter in the Kern County Superior Court, one could expect it to continue to be complex.

Finally, the court must consider the paramount interest of the creditors. Both Rogers and Mosesian are not simply creditors. They each have litigation interests in this matter. Both wish to use the bankruptcy court proceedings to gain an advantage in the Kern County Action.

1   For the foregoing reasons, the motions to approve the
2   settlement agreement will be granted.  Counsel for the trustees
3   in the respective cases may submit appropriate forms of orders.
4   DATED: September 25, 2006

     WHITNEY RIMEL, Judge
     United States Bankruptcy Court

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF FRESNO         )

I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721. On September 25, 2006, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

Justin D. Harris, Esq.
WALTER LAW GROUP
7110 North Fresno Street, Suite 400
Fresno, CA 93720

Michael T. Hertz, Esq.
LANG, RICHERT & PATCH
P. O. Box 40012
Fresno, CA 93755-0012

Hilton A. Ryder, Esq.
McCORMICK, BARSTOW, SHEPPARD,
   WAYTE & CARRUTH
P. O. Box 28912
5 River Park Place East
Fresno, Ca 93720-1501

Estela O. Pino, Esq.
PINO & ASSOCIATES
4600 Northgate Boulevard, Suite 215
Sacramento, CA 95834

I certify (or declare), under penalty of perjury, that the foregoing is true and correct. Executed on September 25, 2006, at Fresno, California.

_Kathy Torres_
Kathy Torres, PLS